AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**DISTRICT OF** MASSACHUSETTS

UNITED STATES OF AMERICA

V.

Aaron Grusby
73 Abbot Avenue
Everett, MA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: _CC. M0099 / cn_

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March-May 2000__ in __Essex__ county, in the _____ District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense)

knowingly execute a scheme to obtain moneys under the custody and control of federally insured financial institutions by means of false and fraudulent pretenses, representations and promises

in violation of Title __18__ United States Code, Section(s) __1344(2)__

I further state that I am a(n) __Special Agent, FBI__ and that this complaint is based on the following
Official Title

facts:
see attached affidavit of Edward G. Rodrick, Jr.

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant
EDWARD G. RODRICK, JR.

Sworn to before me and subscribed in my presence,

_____        at        Boston, MA
Date                                          City and State

LAWRENCE P. COHEN
UNITED STATES MAGISTRATE JUDGE               _____
Name & Title of Judicial Officer              Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc

8-22-00  Warrant issued.

AFFIDAVIT

I, Edward G. Rodrick Jr., being duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and am currently assigned to an economic crimes squad of the Boston Field Office. I have been a Special Agent of the FBI since December 1999.

2. I submit this affidavit in support of a criminal complaint charging AARON GRUSBY ("GRUSBY") with bank fraud, in violation of 18 U.S.C. §1344(2). This affidavit is made on my personal knowledge and, where indicated, on information that I have received from others, including GRUSBY.

3. Since June 1, 2000, I have been involved in an investigation concerning GRUSBY. GRUSBY, currently unemployed, resides at 73 Abbot Avenue, Everett, Massachusetts.

4. As detailed below, I have probable cause to believe and do believe that GRUSBY knowingly executed a scheme to obtain moneys under the custody and control of federally insured financial institutions by means of false and fraudulent pretenses, representations and promises. In so doing he defrauded Kenneth Blackadar ("Blackadar"), 13 Belgian Road, Danvers, Massachusetts, out of $14,000, and Judith A. Purinton and David W. Purinton ("Purintons"), 15 Belgian Road, Danvers, Massachusetts, out of $2,000, based on materially false representations about a fictitious Initial Public Offering

("IPO"), and other investments through non-existent "sub-accounts" at Charles Schwab ("Schwab"), Fidelity Investments ("Fidelity"), and the Federal Reserve Bank of Boston. As part of the fraud scheme, GRUSBY convinced Blackadar and the Purintons to withdraw moneys they had on deposit at federally insured financial institutions, and provide those moneys to him based on the false and fraudulent representations he made about non-existent investment opportunities.

5. I received the following information from Blackadar, the Purintons, and GRUSBY in June and July 2000, and have reviewed phony documents sent to Blackadar and the Purintons by GRUSBY.

6. GRUSBY befriended Blackadar in January 2000 at a training seminar for new employees of Analog Devices ("Analog"). Shortly thereafter GRUSBY resigned from Analog. However, he continued the friendship by visiting Blackadar at his residence. Together, the two would discuss, among other things, investments. Sometime in February or March 2000, GRUSBY informed Blackadar of an opportunity to make money through an IPO of Staples.Com. GRUSBY falsely claimed that this opportunity was being offered only to existing Schwab account holders, and although it was too late for Blackadar to establish a Schwab account, Blackadar could invest through GRUSBY's own Schwab account, by way of a "sub-account." I have been informed by the Risk Management Division of Charles Schwab that Schwab does not offer, nor are they familiar with, "sub-accounts." In March 2000, GRUSBY instructed

Blackadar to write a $2,000 check, payable to GRUSBY, and to include the last four digits of his social security number in the memo field. The next day, after Blackadar had done as instructed, GRUSBY falsely informed Blackadar that the $2,000 check had been deposited at Schwab, and subsequently invested in the Staples.Com IPO. In actuality GRUSBY cashed the check at the Salem Five Bank, which was Blackadar's bank, and which is a federally insured financial institution. Additionally, GRUSBY informed Blackadar that he would receive a Schwab statement and confirmation which would detail his investment. During the course of the next few weeks, GRUSBY fabricated Schwab account statements and confirmations reflecting the $2,000 investment and mailed them to Blackadar.

7. Believing the Staples.Com IPO to be a good opportunity based on the information provided by GRUSBY, Blackadar informed his neighbors Judith and David Purinton about Staples.Com. The Purintons became interested and informed Blackadar that they too would like to invest in the Staples.Com IPO. On April 3, 2000, at the direction of GRUSBY, Blackadar instructed the Purintons to write a $2,000 check payable to GRUSBY to be deposited into a Schwab "sub-account." The Purintons never met GRUSBY, as the transaction was passed through Blackadar. Over the course of several weeks, GRUSBY mailed the Purintons four phony Schwab statements and confirmations reflecting a $2,000 deposit into a "sub-account." David Purinton informed me that the $2,000 check

3

was cashed at Danvers Savings Bank, which was the Purintons Bank, and which is a federally insured financial institution, the same day it was received by GRUSBY. Furthermore, GRUSBY admitted to this affiant to taking and misappropriating the funds to pay back loans given by friends, and to pay credit card debt. GRUSBY also admitted to this affiant to using the funds to pay a professional company to produce the fabricated documents in furtherance of his scheme.

8. In April 2000, GRUSBY suggested that Blackadar invest $2,000 in the Fidelity Magellan Fund through GRUSBY'S existing "sub-account" at Fidelity. GRUSBY instructed Blackadar to write a $2,000 check, payable to GRUSBY, which GRUSBY cashed, again at the Salem Five Bank. GRUSBY subsequently mailed Blackadar a phony statement and confirmation reflecting a $2,000 investment in the Fidelity Magellan Fund. A copy of the check, statement, and envelope have been furnished to me by Blackadar.

9. On the basis of the apparent success of the Schwab and Fidelity investments offered by GRUSBY, Blackadar agreed to invest in a U.S. Treasury bond through the Federal Reserve Bank of Boston ("FRB"). On May 19, 2000 GRUSBY instructed Blackadar to cash in his $10,000 Certificate of Deposit held at Mercantile Bank, a federally insured financial institution. GRUSBY then instructed Blackadar to drive him to the FRB and wait in the car while GRUSBY went inside to make a deposit of the $10,000 cash into a Treasury direct "sub-account." GRUSBY returned, and

provided Blackadar with a document reflecting a fictitious $10,000 purchase of a five-year U.S. Treasury Bond. The $10,000 in cash was never invested, and was kept by GRUSBY. Blackadar has furnished the FRB statement and a subsequent FRB statement which he received via U.S. Mail. A Senior Attorney in the Legal Department of the FRB reported to this affiant that the FRB does not have, nor do they offer a "sub-account."

10. In an interview with this affiant, GRUSBY admitted to misappropriating the $16,000 referenced above for various personal expenses, such as paying off his credit card debt, renting a car, and paying bills. GRUSBY also made two payments, between $500 and $750, to Kevin McKelvey as ordered by the State Securities Division on December 16, 1999. I was informed by Schwab that GRUSBY previously held a Schwab investment account which Schwab closed in March 1999, after the company learned about a similar, fraudulent IPO scheme in which GRUSBY defrauded another acquaintance, Kevin McKelvey, out of $4,000, utilizing Schwab's name.

11. Based on the information above, there is probable cause to believe and I do believe that between March and May 2000, AARON GRUSBY knowingly executed a scheme to obtain moneys under the custody and control of federally insured financial

institutions by means of false and fraudulent pretenses, representations and promises, in violation of 18 U.S.C. §1344(2).

```
_____
EDWARD G. RODRICK, JR.
Special Agent
Federal Bureau of Investigation
```

Subscribed to before me this 22nd day of August 2000.

```
_____
LAWRENCE P. COHEN
United States Magistrate Judge
```

6